Thank you. Could I have those who are going to present with regard to this case approach the podium and identify yourselves please? Good morning. May I please have the floor? I'm Joy Weedy. I represent Rozelle Russell. Mr. Russell has consistently maintained since 2000 that his confession was physically coerced. The question for this court is whether he has satisfied the cause and prejudice test by attaching the lock-up report to which he never previously had access. The lock-up report contradicts police testimony that strongly implied that all investigation was suspended for the night at 2 a.m., that Russell was taken down to lock-up and left there, and that nobody interacted with him again for purposes of investigation until the next afternoon. In contrast, this lock-up report shows that Russell did not spend a peaceful night in lock-up. Rather, investigation stopped for only an hour while Russell was fingerprinted, photographed, and then taken out again for investigation at 3.30 a.m. and not returned again until 18 hours later after his confession. Counsel, I have a question regarding the lock-up report. When did counsel become aware of the existence of this lock-up report? He doesn't specify in his petition when he becomes aware, although there are cases where the defendant did not specify the time that they became aware of the relevant claims. How are we able to gauge due diligence here? Taking his claims as true, he claims that for years he attempted to access his discovery materials, police reports, from his trial counsel, his post-trial counsel, the clerk of court, and he eventually got some documents, including this lock-up report, from writing to the state police. So taking that as true, he has shown due diligence in attempting to get these documents, and he did not have them before now. Where does the peaceful night in lock-up come from, that he had spent a peaceful night in lock-up? That seems to be the implication of the testimony of the officers at the suppression hearing. They left, and they had no contact with him until the next day. Right, yes, that's right. Okay, so we're asking that Russell should be allowed to file this petition because he adequately alleges facts demonstrating cause and prejudice for his claim that his confession was physically forced. So again, he's shown cause because he's tried to get these documents, and he hasn't had them until now. Also, he's shown prejudice under Rice and other cases like Nicholas because he has alleged a consistent claim of abuse. He now has some evidence to corroborate that claim that he's been making. What is the evidence of abuse, either physical or mental? What exactly type of injuries did he sustain? So he has corroborating evidence for his version of what happened at the police station that night. So his version is that... But I mean, what injuries did he sustain? What specific injuries did he sustain as a result of this abuse, whether physical or mental? So he claims that he was repeatedly slapped in the face, that he was held by the neck against a wall while being questioned, that he fell to the ground and was kicked. So those are the injuries that he sustained as part of his claim of abuse. And is there any evidence to substantiate these claims of either marks or photographs or something of that nature? Not that he's attached to his petition, but that isn't required at this stage. So this is a pleading stage. He hasn't gotten to an evidentiary hearing yet. So although he doesn't have that evidence at this stage, that shouldn't count against him for being able to file. Okay, so he's shown prejudice under Rice. How does the lockup report corroborate these claims of abuse other than to establish that he was in an interview? The lockup report itself doesn't corroborate the fact that he was abused. It just puts him in different places at different times. Doesn't portions of the lockup report actually refute his claims of abuse? Is there any indications on any of the movement reports that he came back to the lockup with any marks or bruises? Anything like that? No. So again, at this stage, he isn't required to have evidence of marks and bruises. So what's happening here is there are two different accounts of what happened that night and the next day at the police station. And the testimony of the officers was, we took him down to lockup. We all went home. No one interacted with him until the next afternoon. They said they didn't. Right. Now this person that supposedly, and we'll assume it's true, took him out of lockup, his name was Professor Wright. Yes. P-R-I-G-H-T. Yes. And then someone else put him back in. I can't remember the name. Those names don't have any association with anyone, do they? No one that has testified at trial or at the suppression hearing. Yeah, so I mean, again, I think that how do you connect those unknown named officers as supporting this suggestion that that corroborates the physical coercion? Okay, so this lockup report provides a detail. Let me point to People v. Nicholas, where that defendant, his new evidence is just that after the fact, he could identify an officer that he had talked about earlier as someone playing a good cop role. So the new evidence that he had was only a name. And the court found that that was sufficient to add a significant detail that lends considerable corroborative weight to that defendant's claim. And so I'm saying, here we have this lockup report. It doesn't specifically show that he was abused, but it corroborates the claim that he's been making from the beginning, that he was held in a small interview room. Where does the report indicate that? I mean, for example, he says that it's a small interview room. Where does the report indicate that he was locked up in a small interview room? Right. So what we know from the report is that he was not in the lockup. And there's no other evidence in the record for where he could have been. I'm sorry, but how does it corroborate his versions about being in a small room, that there's no windows, that he doesn't have access to the bathroom or a bed? So how does this report corroborate those claims by him? It corroborates them in the sense that there's no other evidence for where he could have been in the record except from his own testimony that he was held in this small room without windows. And that description fits the description of the interview rooms given by the officers. The officers do say, you know, he was held in this interview room. But at 1.30 in the morning, we had this meeting. At the end of the meeting, we took him down to a lockup, and we all went home. And it implies that he remained there in the lockup. While, clearly, he did not remain in the lockup. And there's no other evidence for where he could have been except from his own testimony that he was being held in this small interview room. And that people came in and questioned him and physically abused him. Did he raise that physical abuse in his first PC? Yes, he has consistently raised this. Yes, so in the first PC, he claimed that the trial court abused its discretion by denying his motion to suppress the video confession. In the first PC, his counsel withdrew for lack of issues of merit. So he's been raising this claim consistently, and it's been consistently rejected for lack of evidence, which he now has. So he raised it, obviously, at the suppression hearing. The court at the suppression hearing found that there was no impeachment from any of the records. We now have any of the police records. We now have a police record on direct appeal. He claimed ineffective assistance for failing to have him testify at the suppression hearing. The appellate court affirmed, finding that he presented no corroborating evidence of coercion or abuse. So he's been making this claim consistently, and it's been consistently rejected for lack of evidence, which he now has. Okay, so he's adequately alleged facts, demonstrating cause and prejudice, and he should be allowed to file his petition on that basis. In addition, he's also attached an affidavit of Burt Robinson, who claims he was at the scene of the shooting, he got a good look at the shooter, he gave a physical description of the shooter, including that he had a bumpy complexion, and he can say that he was not Mr. Russell. The shooter was not Mr. Russell. So it's a new person. Yes. Robinson. Well, we're looking at it in terms of the standard that it's more likely than not that no rational jury would found him guilty. Is that the standard for the success of PC for both of these issues? So they have slightly different standards, the two different issues. So for a success of PC, don't we have one overarching standard, whether it's actual innocence or maybe I'm wrong. You tell me. No, I believe that they are separate standards. So for the cause of prejudice and then only for actual innocence, is the more probably or more likely than not that no rational jury would have found him guilty? Right. So that would be Edwards, and it needs to raise the probability that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence. All right. Now, Mr. Robinson, was he in the penitentiary? Is that how he met? Yes. Okay. And he met him six years prior to the affidavit? Yes. Do we know what he was doing in the penitentiary, Mr. Robinson, what he was convicted of or how much time or anything? Does he say anything more in his affidavit? Not in the affidavit. No. But he did meet him in prison? Yes. And then he waited for six years because of what was his reason? He didn't want to be involved. He didn't talk to the police at the scene because he had a case pending at the time? I know that. Yes. In the six years, what was his reason then? Just that he didn't want to be involved. Okay. So then six years passed, then he provided the affidavit? Yes. All right. Now, is that the kind of trustworthy eyewitness account that the court referenced in Edwards when they referred to the U.S. Supreme Court case? So the U.S. Supreme Court case that they referenced, yes, was talking about like the ultimate, to be ultimately successful at an actual innocence claim, you have to have pretty substantial evidence. However, we're not at that stage yet. Okay. So you're saying that this was what we're looking for at the third stage of a successful case, not the elements of a claim of actual innocence, must be newly discovered material, not merely cumulative, and of such a conclusive character that would probably change the result? So we're still looking for those elements. All right. Well, let's take it from there then. Okay. Let's throw out his statement completely, get rid of it. Okay. Okay. All right. So you have two eyewitnesses, both of whom immediately spoke to the police, gave an identification. One of them actually gave the license plate of the car that left the scene of White Camry. Hours later, the defendant was arrested driving the car, and then he fled from the police. Throw out the statement. Keep those two eyewitnesses in the car. And add Mr. Robinson. Okay? Oh. Could I? I'm just giving like a hypothetical. Let's say we threw out the statement. His fingertips? Yes. Oh, okay. Let's say we forget about his statements completely. Okay. Let's say it's worthless. So then under this scenario, consider that we still have the two eyewitnesses. Okay. One of whom gave the police the license plate of the car he said left the scene. And later that day, the defendant is actually arrested a few hours later in that car as the driver, and then when the police try to stop the car, he flees. Okay. Okay. And pit that against Robinson. Do you think that meets the standard of it's more likely than not that a rational jury, no rational jury would have found him guilty? Yeah. Well, so the standard is it needs to raise the probability that it's more likely than not. Yes. And so on. And so, yes, I do think it raises the probability. I mean, it's additional relevant evidence to be weighed against those two witnesses, the state's witnesses. So we now have a defense witness who was at the scene who can testify that this was not Mr. Russell. Taking his claims as true, it was not Mr. Russell. But can anybody who meets the defendant in prison come along and say this? I mean, it's just too easy, isn't it? To just say, oh, by the way, I was there even though I didn't say anything about it for X number of years, and here I am, and I was there, and it's not him, the guy that I happen to be in prison with. I mean, the amount of impeachment that would be available to counteract that witness's testimony certainly would pale in the face of eyewitness testimony that implicated him in the crime. So this is at a pleading stage, and so. It has to be somewhat conclusive evidence, doesn't it? Doesn't it have to rise to the level of evidence that would lead us to conclude that no reasonable juror would find him guilty in the face of this new evidence? And are you saying that when somebody gets on the witness stand and says, I happen to be in prison with this guy, and I was there, but I didn't say anything about it for six years, but here I am, and he's not the guy, that's going to sway this verdict the other way? Isn't it kind of easy? Well, so at an evidentiary hearing, the requirements go up, but we're not there yet. So this isn't an evidentiary hearing. What changed six years later? Why did Robinson then all of a sudden decide, I'm going to write up that affidavit and indicate that, yeah, I was there that evening. Just he felt like he wanted to help this guy out. His fellow inmates. Yes. Six years later. Yes. So, again, we're at the pleading stage. We're taking this as true. And taking it as true, it's new, it's material and non-cumulative, and it raises the probability that it's more likely than not. What about the case of the state sites? I think it was Harris or something. Was that a first-stage dismissal or not? I may have the name wrong. It was a number of co-defendants who came out later and filed affidavits years later saying, well, we all agreed we'd name him just because. Case. Do you remember that case? I heard that case, but I'm afraid. Well, I may have the name wrong. I apologize. I'll let the state. But in that case, I was just trying to find out if that was a first stage of a successive PC or not. Right. I'm sorry. I don't recall. If we could just go back to lock up the probe for a moment. Yes. At the trial level, I believe the record indicates that the lock up report that we're discussing today originally came up when one of the allegations was ineffectiveness of counsel. And the trial court found that that issue was res judicata because it had already been litigated before. So now in appeal, you're not raising res judicata, correct? Correct. And you're not raising ineffectiveness of counsel, but what we're indicating is the lock up report that had been previously provided in the post conviction motion is now new evidence. I'm sorry. Could you say it again? So this lock up report originally, when the motion was presented, the petition was presented, asserting ineffectiveness of counsel. And the trial court determined that that was res judicata because that issue had already been decided previously. And the basis for the ineffectiveness of counsel before the trial judge was the lock up report, that the attorney did not use due diligence on the report, et cetera. But the court found that that was res judicata. Now, so you're using that lock up report now not as for the argument on appeal for res judicata or ineffectiveness of counsel, but now you're asserting it as new evidence. Is that correct? Yes, it is new evidence. And the trial court, it was not res judicata at the trial level either because it's new evidence. Now, was ineffectiveness of counsel previously litigated before? Yes, but without this new evidence. So the new evidence, it was not considered in the light of this new evidence. And the new evidence, if it passes the cause and prejudice test, it's the cause and prejudice test that gets it passed res judicata. Okay. Well, the case I was thinking of was Harris, a Supreme Court case, 206-0-2, where two co-defendants provided affidavits. And this is a first PC, an initial PC, not a successive PC. And the co-defendant said that they conspired to frame the defendant. It was a scheme to say it was the defendant who shot the victim in the event any of us got caught. And in that case, the Supreme Court affirmed the dismissal of the first case because they said that the evidence was overwhelming and the affidavits are not of such a conclusive character that they would probably change the result when they stood opposed to the defendant's own confession in an independent eyewitness testimony. So there, the Supreme Court affirmed the dismissal, affirmed the first-stage dismissal of an original PC on somewhat similar facts. So how would you suggest that, you know, distinguish Harris? It's in their brief. How would you distinguish that? So I guess one way is that at this point, he is trying, Mr. Russell is trying to get permission to file. So he's not at a first stage at this point. No, this is, but here it is. This is a successive PC as opposed to Harris, which was a first, an original PC. So I'm just saying how would you distinguish that case where the Supreme Court said, this is not evidence that would likely change the outcome. That's how they, they, they roamed on that final prong of actual innocence. Yes. I'm afraid I don't remember the case. So off the top of my head, I would just appeal to the difference of this different stages. Well, following up on Justice McBride's question in regards to how this affidavit would change the outcome of the trial, how does this affidavit change the outcome of the trial with regards to the two witnesses at the scene? Both of them end up identifying the defendant as the shooter. And then they also identified the vehicle that he was allegedly in at the time, which he actually is in when he gets arrested. Yes. And it was never established that they had any basis or reason to lie when they were testifying at trial. So how does this affidavit change their testimony or change the outcome of this trial? Yes. So, so both of these witnesses, one of them was acting as a lookout, and his testimony was that he saw that person in the white car for a second, and then was, was, you know, turned around to look for police. I believe they saw a white Camry, right? Yes. Okay. The other eyewitness saw him from the back and from the side and didn't claim to get a full-on view of the shooter. And so, so here we have a witness who says that these people were coming towards him on the street, that he was able to give a description of his facial complexion, his clothing. Twelve years later. Twelve years later. Yeah, he had a long time to think about it. He did, but at this point. We don't have to be too cynical. But it's a cleaning stage, right? So it gets, it gets more difficult as you go up the stages. Okay, anything else, counsel, at this point? So we ask that this court, the court reverse the circuit court's denial of the defile and remand the case for second stage proceedings. Thank you. All right. Thank you very much. We'll hear from you again in a little while. Okay? Ms. Ferrosi? Good morning, Your Honor. Good morning. As an aside, I just want to thank you for moving the time back for me and accommodating my crazy schedule with small children. So thank you for that. So, as you know, successive petitions are disfavored. And in this situation, defending has raised the voluntariness of this confession four times prior to this. At his motion to suppress statements, which was denied. At trial, which the jury rejected his testimony. On appeal, where this court noted that there was no corroborating medical evidence to show that he was injured in police custody. And his post-conviction petition. And now he's trying to, again, bring up this police coercion claim under the guise of this newly discovered evidence of a lockup report. However, the lockup report does not at all go to the crux of his claim, which is that he was physically abused by the police. Does that suggest, though, that for a number of hours he really wasn't in the lockup? Well, Your Honor, the state never disputed that in the motion to suppress statement or at trial, that he had spent time in the lockup. Excuse me, in an interview room. Looking at the trial testimony and the motion to suppress testimony, he was brought in at 8 o'clock at night. Was not interviewed by a state's attorney until I believe it was 1 in the morning. So your position is that he really never suggested that he wasn't in the lockup, just that the officers and the state's attorney left and didn't have contact with him, wherever it was that he was. Exactly. That's it, exactly. And even if this report corroborates that he wasn't in lockup, it does not add anything to his claim that he was physically abused by the police. And actually, it goes against it, because when he testified at trial, he said that pretty much the moment he was arrested, the police started slapping him around and beating him. And the lockup report says specifically that there's no visible signs of injury. So that doesn't help his claim. All it would really help is that he was checked out of lockup. That doesn't mean he wasn't physically coerced, just because there's no visible signs. Correct, but it doesn't help his claim either. And at best, just that he had been checked out of lockup by some unknown officer that was never involved in this case, was never testified in this case. Remind me how long that was supposedly for, that he was checked out and then brought back. Was it a significant period of time? Yes, he was checked into lockup at 2.30 in the morning on April 12th. He was checked out of lockup at 3.30 in the morning on April 12th, so an hour later. And then he was not returned to the lockup until after his videotape confession, which was around 9.40 at night on the same day. So he was in an interview room, presumably. Yeah, that's the question. So where was he? I mean, if he's checked out by people that are unrelated to the investigation, where did he go? What were they doing with him? Were they putting him in other lineups for other cases? That's unknown. However, it doesn't go to the crux of his claim that the police abused him. His own testimony at trial is that he was put in an interview room after speaking with A.S.A. Bowden, which is just to get the timeline, he's arrested. A.S.A. Bowden is the first A.S.A. that comes out. She interviews him. He gives an alibi. Her and the detectives leave and go investigate this alibi. He says sometime later he's put in an interview room, and another detective comes and slaps him around after a while. So at trial, he testifies to this. Not only did the jury reject it, but it is also a completely different story than what he gave alleged at the motion to suppress statement, which was that there was no abuse until around the time he was taken to the lie detector test. So it changed. Just briefly at the lie detector test, what was the testimony given at the motion to suppress regarding what did the state's evidence show about this polygraph? Was there some testimony that polygraph examiners said he doesn't want to do this anymore? He's based on admissions? Was there further elucidation of all that? Just that after the A.S.A. That was A.S.A. Aikman and the two detectives. The polygraph examiner told them that. They, as we recall, stopped at McDonald's and got food and then went back to the police station. That's when he confessed. What did the polygraph examiner tell them about how it stopped? I believe exactly how you just said it. Nothing more? Just that he's not getting admissions and does not want to take the polygraph. So it was never actually administered. I have a question about the time frame. During the trial, did he ever testify to the fact that he was removed from the lockup and taken into another room? No, he makes no testimony about the lockup whatsoever. Just that A.S.A. Guy leaves and then he's in an interview room. So in his testimony, there was no lockup. So there's never an explanation as to where he was during this time that seems to have disappeared? Yes. I mean, he says he was in an interview room, and the state never disputed that. But, I mean, he was in an interview room. So the lockup report, again, in other respect, is actually consistent with his trial testimony? Yes, but again- Where he's at. Again, trial testimony that was never disputed by the state. What I'm saying is the lockup report in that respect doesn't help him because it- Right. It disputes what he's even saying about his location. Correct. Because he never does testify to that. And therefore- So this issue about having no access to the bathroom or bed, that wasn't brought up during the trial? That was brought up during trial. He testified he was never allowed to use the bathroom. He was never given any food to eat. He testified that he told ASA Ahern this, and I believe ASA Bowden, that they just kind of ignored him and went on their way. Again, rejected by the jury. All of this supposed coercion by the police, completely rejected and already litigated. And again, as this court heard him when he appealed his conviction, this is no corroboration of any medical evidence to corroborate, which is really what this court wanted. And when he tried to say on appeal that my counsel was ineffective because he should have had me testify at the motion to suppress statement, this court said it wouldn't have helped him because he didn't have this corroborating medical evidence. And this is not corroborating medical evidence, obviously. And he, in the cause of prejudice test, therefore cannot show prejudice. Where was this report? Because it wasn't around and then all of a sudden it appears. Right. So it's obviously it was generated the day he was arrested because the dates on there are the same dates that he was arrested. He does not really state in his petition what actual measures he goes through to get this piece of paper that was obviously readily available or that his counsel never had it. But none of that is in there. Going to the other crime, the cause crime, there's no due diligence shown here of what exactly he did. It's very vague. Like I tried to get it and then I finally got it and this is what I found. So the due diligence isn't there. Presumably it was tendered. I mean, it's not clear in the record, but it was available. And very easily his counsel could have seen it and said it doesn't help. So the fact that it was generated the day of his arrest means that he could have gotten this a long time ago, 12 years after his arrest. As far as the, excuse me, defendant cites Rice throughout his brief to support his claim. But Rice is very different than this case. Rice was a case where the defendant was going into the, was checking into the prison and the prison guard or whoever does the check-in noted a physical injury on him. And also this was a case that was involved with the Burge investigation and one of the detectives was named in that investigation. So Rice is completely different than this, a defendant that just keeps trying to take another bite at the apple. And after being rejected numerous times. And as far as Burt Robinson's affidavit, Edwards clearly states that and insists that this new affidavit has to have some type of reliability. And for a witness, that would be a trustworthy eyewitness account. So even assuming that it's true what he says, it's untrustworthy because it is 12 years later. He doesn't state in his affidavit. It's completely blank. I mean, we presume they met in prison. It doesn't state that. He doesn't state how did they have this conversation where he figured out that he was there. And the defendant doesn't have an affidavit. Like, I met the guy, I told him I was in prison for this and he told me. That is all completely unclear. We don't know how they met or how they even figured out that he was there at the time of the crime. Unless the defendant told him. But that's all speculation. And it goes to the unreliability of this. Notwithstanding. Well, the defendant has told us today that, well, this is just the pleading stage. And we have to accept that and let it go forward to an evidentiary hearing. Do you think that that's the standard? No. And as Justice McBride pointed out, the Harris case that we cite, that is a first-stage post-conviction petition where the standard is significantly lower. That is frivolous and patently without merit. And the Supreme Court said that that even didn't meet that standard. And as the Hodges case says, a first-stage claim of actual innocence, the standard is frivolous and patently without merit. But this is a successive petition, again, a petition that is looked down upon by the courts because we want the finality of a prosecution and of a litigation. So the standard is much higher. So if that defendant, which was two co-defendants, coming forth years later saying, oh, the defendant wasn't there, and in that case, which is similar, and the court looked at all the other evidence saying, well, you confessed to it, and there's eyewitness testimony, if that doesn't even meet the threshold, then clearly in this case, which is a much higher standard. How would you describe the standard? The standard is, in Edwards, more than likely than not, that no reasonable juror would have convicted him in the light of the new evidence. And they clarified, in other words, so conclusive it would change the result on retrial. So the evidence has to be so conclusive it would change the result on retrial. And what about the eyewitness testimony? We have one who's the lookout, so he's involved in the incident. And then the other one's not really kind of clear in terms of the face. But then now we get this affidavit from Mr. Robinson that says, I clearly saw who it was because they were running towards me. I was hiding behind the car. And so I saw that it wasn't the defendant. Your Honor, I don't know where this characterization of not being clear on an ID has come from, from the defendant. Both the witnesses ID'd the defendant in a lineup hours after the crime. Not days, not weeks, not 12 years, a few hours after the crime. The lookout was an underrated drug lookout. It was not involved in this murder. And he saw the defendant approach the victim, and he looked away and looks, here's a shot. He turns his head, and he sees the defendant running into the white Camry. The other witness is just parking his car, not involved in any of this, parking his car, sees the defendant, two people running, and the defendant chasing them, and then shooting the victim, getting in the white Camry, and then the second victim's crewmate follows him in his car and gets his license plate number, which is what he gives to the police. Defendant is arrested in the same car with the same license plate number. He actually is arrested. He flees from the car, right? Jumps out of the car, tries to climb a fence. This crewmate, he's a not interested good Samaritan. Exactly. He runs down the plate, gives the police the description of the car. The police run down the car, and these people get out of the car, and they're running away. Exactly. He's climbing up a fence in the bedroom. Did he have any convictions? Crewmate. I thought they all did. I think he did, yes. I don't remember what it was for. All right. So that came out too. Yeah. The lookout guy and crewmate. I'm sorry. The lookout guy is Stevens. So he's a good Samaritan with a conviction. Right. He's a good Samaritan. Even when he testifies, he's like, I didn't really want to help the police, but I did. His testimony. He didn't really want to help, but he did. He had enough time to get the license plate. Right. I mean, it's shocking from the view. So with all of that evidence. One question. Yes. Was that statement contested as involuntary? The Harris case. I don't believe so. All right. I don't believe so. And even though the defendant is contesting that this is an involuntary statement, it still exists and can still be considered when you're looking at all the evidence. He did ultimately confess to this. Confessed to being in the white Camry, wanting to rob a drug spot because they're easy to rob. He was just going to scare the guy with his gun. Winds up shooting him. Admits to fleeing from the police in the white Camry. So all of that evidence shows that the affidavit is not reliable. And the trial court did the correct thing by not giving the defendant leave to file a successive petition. I'd like to go back to the lockup report from earlier. Yes. So as I mentioned, I asked the defense counsel, originally the petition that was filed with the trial court was challenging the effectiveness of trial counsel. And the lockup report was prevalent. It's not clear in the record whether or not the trial court really considered the report or not. But in that petition that included the report, the trial court determined it was res judicata because that issue had been determined previously. So should we consider that at all? Or should we give it any weight in terms of the court's ruling with regards to the report being attached to the petition originally as ineffectiveness of counsel? I'm sorry. I mean, it is res judicata. This would relax res judicata if you determine that it is. We're fundamental fairness. Yes. So, I mean, it's our position this has all been litigated repeatedly. This lack of, excuse me, this police misconduct. And this, as the court ruled, is not medical evidence. And this would include the lockup report. Exactly. So let me answer that a little bit more clearly. That he has now shown cause and prejudice to allow this lockup report to come in and to allow a successive petition, again, where the bar is so high. And we would ask that this court affirm that ruling and help with the finality of this litigation. This is not enough that the defendant is presented here. And I would ask you then to, of course, consider everything I have in my brief and my arguments today and affirm the ruling. Thank you very much. Thank you, Ms. Roach. Sheree? Yes. So in three minutes I would like to try to address the concern that successive post-conviction petitions are disfavored by the court. So People v. Nicholas, the appellate court applied a low pleading threshold in that case. And the reason given was in consideration of the most serious allegations of police misconduct raised by the defendant. So although successive petitions are disfavored, the court has expressed a lot of concern about these allegations of police misconduct and has applied a low pleading threshold. I'd also like to point out the difference. So Rice, although it's true that Rice is a Burge case, the case law that has come out of Rice suits this case precisely. So he has alleged a consistent claim of abuse. He now has some evidence to corroborate that claim. He claimed that his confession was a result of that abuse and that confession was used against him at trial. And that's what Rice found constitutes prejudice. So, again, Mr. Russell has pled sufficient facts to show cause and prejudice and also a culpable claim of actual innocence. And so on either one of those counts, we would ask that this court reverse the circuit court's denial of leave to file and remand the case for second stage proceedings. Thank you. Thank you, Counsel. All right. The court wishes to thank you for your excellent arguments today and also your excellent briefing. And it's obviously an interesting and important case. We will take another advisement. Be sure to recess. Thank you very much.